Good morning, Your Honor. Good morning, counsel. If it pleases the court, Dave Piniella for the appellant, Jason and Christine Tellez, and I would respectfully request to reserve two minutes for rebuttal. You may do so, counsel, but keep your eye on the clock. Yes, sir. Thank you. Well, we appeal the district court ruling that my client lacks standing and therefore subject matter jurisdiction for this court. We believe respectfully that the district court was in error in finding the plaintiff as an employee entitled to compensation under ARS 23-123B. It was this finding that apparently led the district court to their decision, and we believe that the facts and the law dictate otherwise. Counsel, can you hear me? I can. Go ahead. Thank you. As far as the record showed, the claim for compensation by your client was denied, but that was on appeal. And I know it's outside the record, but where does that appeal currently stand? Is it definitive that he has no benefits? He still stands as denied. The case, as I understand it, and I'm not handling his comp claim, the case, as I understand it, is basically waiting on a ruling from this court. That's what I was advised by his comp attorney. A ruling from this court, the Ninth Circuit? Yeah, to see how this turned out. Oh, I see. Waiting for this case. Right. Counsel, if I might, it seems that the focus on 23-1023B has taken us away from a focus on A. And if you look at B, it refers to the employee who is entitled to compensation, the definite article B. If you go back to A, it refers to an indefinite article, an employee who is entitled to compensation. It seems to me that those clauses, those phrases have to mean the same thing in A and in B. And my point is, if A means, if B means paid, it means that in A, but it doesn't make any sense there. If it's paid, it means that the employee has to be paid before the employee can pursue the injured person's remedy. You see what I'm saying? I think so. What's your response to that? Well, I think, basically, as we stated in our response to the motion to dismiss, that we took, I think, a logical position on that, that because the claim was denied, he couldn't be found entitled to compensation. Put another way, Your Honor, that there was no claim that the work comp carrier could reassign him when they paid nothing. And so, you know, in the order, the district court called this an interesting theory, but I think it's really a lot more than that. So, counsel, if I understand your answer correctly, it is that you read A and B the same way, that the entire thing pertains to a person who has received compensation, and what happens to that person? Well, yes, because we think that that does not apply to a person who has not been paid any benefits and who has been denied. That's basically the thrust of our position. We believe that the assignment provision applies to an employee who has been paid and received Workman's Compensation's benefits and not to somebody who's been denied. And we think there's case law that basically references this, as we've indicated in our briefs. And in addition to that, I think that when we consider the two bases that the district court used in arriving at its decision, they cited tally and also ARS 23-1021. And, you know, to some extent, we're saying tally really isn't fully applicable because that involved a very different situation. There was a third party settlement, and there were questions about whether the statute applied to non-industrial accidents, but even tally discussed payment. But the more important part of that particular ruling by the district court, Your Honor, was that they specifically cited ARS 23-1021. But they didn't fully address that as they would have needed to, to resolve the issue in this case. That statute is entitled the right of an employee to compensation, and it contains the operative words, shall be entitled to receive and shall be paid compensation. So this is why we're taking the position that we're taking. This is why we think it makes sense. Can I ask you one more question? It seems to me that there are at least two potentially plausible ways to read this. Is this an issue that we should certify to the Arizona Supreme Court since there's no opinion that's clearly on point interpreting 1023? Well, I would, I would submit to the court that that's certainly one option, but I also think that there is case law in Arizona that leads us to the right conclusion, as I've, as I've indicated, in my brief. You'd be relying on in that case, which case under Arizona law would you be relying on that would not, would suggest we don't need to go certification? Well, if, if, if I might, I'd like to back up just a, just a second, if I could. There's a district court case, the Poindexter case, all the way back from 1981, that says if not, if such an action is not brought within one year of the injury, however, the claim is assigned by operation of law to the party who paid the compensation benefits. So this court case, that's this court's case from 1981. So is it your argument that that's binding on us as an interpretation? It's kind of an aside in the context of the case. Well, I, as I indicated, I think it's one of those cases as, as part of this puzzle that leads us on a trail to the right place. The, the Moretto, the Moretto two case for your question about Arizona law. That discussed the applicability of the assignment provision and that it depended on whether the injury at issue was compensated in such a way that the third party tortfeasor may benefit from Moretto's failure to observe the time constraints of ARS 23, 10, 23. So looking at, I think you would need to look at some of these cases, Moretto, but also that there's, there's a larger picture here that Aitken is, I think, the lens that the Arizona courts want these cases to be considered through. Aitken held that workers' compensation law should be construed liberally, remedially, and in a manner that the injured employee receives maximum available benefits. And it also said it should be construed to preserve a claimant's opportunity to be made whole to the fullest extent possible. Nothing more, nothing less. So as I go on to discuss later in the brief, there's a whole statutory scheme that has to be considered and the court, courts have specifically said in Arizona, we're to consider the whole scheme, not one part of it. And I think a very strict construction of one aspect of one statute in the entire scheme is, is, is not what was intended based on the language that we see in Arizona courts in Aitken, that there has to be this liberal and remedial reading of all of these cases and, and the construction of these statutes. But I, you know, I cite several cases, frankly, that deal with the necessity of payment. I understand, you know, as your honor said, you know, it's a debatable point that maybe needs to be certified. But I think this poindexter principle was basically followed in several Arizona cases, in Moreto 2, in Lovello, and in Quiles versus Heflin Steel. They've all talked about paying O.R. in Lovello, it refers to reimbursement for compensation actually paid. And in Quiles, it talks about when compensation has been paid. I would ask you a question about B. There's a one year limitation period in B. What happens if the person is not paid and the one year limitation period expires? Well, if the person is not paid and it expires, then essentially, he winds up being out of luck. And I, and I think that's what Aitken spoke to that we should try to avoid that kind of a thing, that we wind up in a situation that, you know, the worst case scenario is, you know, that there could be a forfeiture. And the Bone case, of course, we know the old maxim about, you know, the law abhors a forfeiture. But the Bone case, Bone v. Industrial Commission that I cited specifically had language in it that said forfeiture undermines the primary purpose of the workman's compensation scheme. But so if the employee does not have to wait until getting paid, the employee can go ahead under B and and pursue the claim. Correct. They they could, but where they pursued it and been denied is where we're at in this in this case. So on the one hand, he's being denied compensation claims. And then on the other, he's not being allowed to proceed with his third party case, even though there is authority that speaks to the necessity of payment. And so the question becomes, to whom does ARS 231023 be? Who does that apply to? And, you know, to we say that, you know, that applies to people who have actually, you know, received benefits, been paid and received benefits and not people who have been denied, like Mr. Telles. I could go on. So. As I indicated, the court below really didn't fully consider the. Language in the in the case, it cited in the statute, it cited in tally ARS 23-1021. Because it said that the operative words were shall be entitled to receive and shall be paid compensation. So without fully considering that, I don't think the court was able to really get to the answer in our situation where an employee who's not been paid compensation and whose claim has been denied could be considered somebody who was entitled to compensation. You're down to two minutes. You indicated that you might want to reserve some time. I'll do that, Your Honor. I'll reserve it. Thank you. Very well. We'll hear from the company. The appellees. Ms. Allen. Good morning. May it please the court. I represent the appellees in this matter. It is our position that the district court correctly found that Telles was an employee entitled to compensation and therefore subject to the assignment provision of ARS section 23-1023B. Well, do you agree that compensation has actually been denied in this case that he's received no compensation? From the from the record, that is the representation that Mr. Telles has made to the court that he has been denied. It has also been represented to the court that he is pursuing his administrative remedies. And that was the record before the district court. There had been a denial, but Mr. Telles continued to pursue his claim. And to my knowledge, that's how it stands today. Counsel, I'd like to also ask you about your interpretation of paragraph B of 23-1023. And I would like to turn your attention to subpar to paragraph D as in dog, which begins if the employee proceeds against the other person, that is the third party compensation and medical and surgical and hospital benefits shall be paid as provided in this chapter. And it goes on to describe after that payment, how much is, you know, is applied to the to the insurer. So doesn't that suggest that imposing counsel's interpretation of the statute is the better one? Well, we would disagree with that because subsection D uses entirely different language than subsection A and subsection B, which gives the right of an employee entitled to compensation to proceed against a third party. So, excuse me, under Arizona law, don't we look at the entirety of the statute to as context for what the subject matter of the section is about and how to interpret it? You know, A and B talk about when you can sue and D says, OK, when you sue, you get your money from your compensation. And here's how the rest of the other entities get paid. And if you read that as a whole, it seems to me that that the that opposing counsel's interpretation is the more reasonable one, even though the statute is ambiguous. I would suggest that there is an alternative, more reasonable interpretation of subsection D as as part of the statute as an entirety. Subsection D addresses the right of the compensation carrier to have a lien against the claim against the third party. So what subsection D states and makes clear is that the injured worker, by proceeding against a third party, does not give up their right to compensation. The carrier must continue to pay compensation. It doesn't say they don't give up their right. It said compensation shall be paid. This is different. But my other question to you is whether or not there is any why in this instance hasn't the claim been reassigned to the employee? That's that's an excellent question to which I do not have an answer that perhaps the appellant can can tell us why. One of the arguments that the appellant makes is that interpreting the statute as the district court did would result in a forfeiture of his of his right to proceed against a third party. And we would contend that is not true at all because Section 1023B actually allows the carrier to reassign the claim to the to the injured worker. So it's our position that. For that to happen, in other words, it's not within the employee's control, is it, whether it is reassigned? It is not, but the employee has the right to request that it be reassigned and we would contend there's no evidence or argument even made in this case that that occurred and was turned down. So our point is that, you know, the employee had the absolute absolute right to sue my clients during the first year after the accident. He did not do so. He then sued 17 months after the accident, which falls within that period of time that by operation of law, that third party claim was assigned in its entirety to the workers' comp carry. If your interpretation of the statute is correct, otherwise it has never been, there's no operation of law. In other words, if the claim is denied and the statute treats that as having no claim, then he would have the full two years of the statute limitations. So I'd like to ask you the question I asked the opposing counsel, which is, what is your view of possibly certifying this question to the Arizona Supreme Court, which has never dealt with it directly? And that's certainly an option the court has. It's our position that the court can follow Arizona precedent, the precedent we cite and which was relied on by the district court to decide that the term entitled to compensation does not require payment. Court's statement in Poindexter. I'm sorry, you cut out. You want me to address the court? So sorry. Can you hear me now? Yes. Okay. I was asking you what your view is of this court statement in Poindexter, which describes the statute as saying the claim is assigned by operation of law to the party who paid the compensation benefits. That particular part of the statute was not at issue in the Poindexter case, and it is dicta and really is an offhand comment by the court. What the court was deciding in that case was a choice of law issue, whether the federal tort claims act, which gives a certain period of time to bring suit applied or whether section 23-2301, which the court read as a suit limitation of one year for the employee to bring suit. And so it was it was a conflict of law issue that did not depend on whether or not the employee was paid. So we would contend that that case is not instructive at all on the issue. Also, if Judge Graber is finished for the questions, I have a question, Judge Graber. All right. What do we know about the denial of the compensation claim? It's I've been through many, many of these cases, and it's very rare to have a compensation claim denied outright. If that happens, it's typically because there's some fraud, fake injury or something. What do we know about it? Well, what what specifically did the compensation entity use as grounds for denial? What we know and what is in the record is in the excerpt of record, page 11, which is the notice of claim status that Mr. Teller's attached to his response to our motion to dismiss. And this document simply checks the box. Number two claim is denied. Zurich American Insurance Company and no further information is given in the notice of claim. As far as I know, that is the only information in the record before the district court. And then the process is within the agency or will there be the appeal go to a judicial body? There are administrative processes that need to happen before it would get to the court of appeals. But he would ultimately have the right to go to the court of appeals. I checked the court of appeals docket yesterday and did not see a case docketed. So as far as I know, it's still in the administrative law part. Counsel, what's your position on whether the following clause is really just intended to differentiate workers comp covered employees versus employees at large? So the language in A and B both says who is entitled to compensation under this chapter. Is that simply another way of saying that these provisions don't apply to every employee in Arizona? They apply to employees who are covered by the workers comp check. That's really what it means. Our position is that if the legislature meant for the assignment provision to apply only where the claim was paid, the legislature would have said so. And it did in other parts of the statutory scheme. And I would direct the court to section 23-1021. That statute provides that every employee coming within the provisions of this chapter who is injured, dot, dot, dot, by an accident arising out of and in the course of his employment, dot, dot, dot, shall be entitled to receive and shall be paid such compensation for loss sustained on account of the injury. And the legislature deliberately used both phrases, shall be entitled to and shall be paid. And then in section 1023, the legislature chose to use just the first part of that phrase, which is entitled to compensation. So it's our position when you read the statutes in parity, that is a very important omission from 1023, which is the automatic assignment provision. And what's interesting is that the Arizona courts in their decisions, although this particular issue has never been teed up, the court has followed in tally, which the district court relied on. The court described who and defined who an employee titled to consider compensation and simply said it's one who is injured in the course and scope of employment and makes no reference to and has been paid benefits. So it's our position the court reasonably relied on tally as an indication of what the Arizona courts would do. Other cases I wanted. Was that expression dicta or a holding? I would say it was dicta closer to the issue at hand in that case, as opposed to the Poindexter case, which really wasn't a side and not at all related to what the court was deciding. I wanted to direct the court to a couple other cases that I think are important for the same reason tally was important. And that would be the case of Oaks. It's a citation Oaks v. McQuiller, 191 Arizona 333. That was another case involving the workers comp statute. And that case talked about an injured employee who has not claimed or accepted benefits and it used it in the conjunctive. So the statute would not apply to an injured employee who has not claimed or an injured employee who has not accepted benefits. So again, again, counsel, that's really in a sense dictum because that that individual had done nothing other than sue the third party. So it just didn't arise as to whether it was sufficient. It would have been sufficient just to make a claim that was denied. That wasn't an issue in that case. Yes, and I would agree. I'm not citing it as the holding of the case. It is dicta and the other case Moretto 1. It's another case where the court use those phrases in the conjunctive. I cite those cases to you as you know, those those clues, the indications of what the Arizona courts would do should this this issue be presented. And the theme in the cases is that there are two separate concepts. There's the concept of being entitled to compensation and then being paid compensation. And again, I go back to the language of the statute. The statute only talks about being entitled to compensation and does not require payment. The I want to focus. I want to turn back to this notion of forfeiture. Just quickly in the time I have remaining. And I want to give you the timeline here so we understand that the plaintiff didn't isn't being forfeited the plaintiff had options. The injury was on May or I'm sorry, March 2 of 2019, Mr. Teller's filed his workers comp claim sometime in May of 2019. The workers comp claim was denied on August 5th of 2019. He then filed suit more than a year later on August 31 of 2020. My clients filed their motion to dismiss on October 30th of 2020, raising the issue of standing and the lack of a reassignment from the workers comp carrier. We know that for is that is that statutory standing or Article 3 standing? Article 3 standing. I'm right. I, I, yes, I believe it's Article 3. So Mr. Teller's at that point in time when we raised this issue had more than six months to request reassignment and refile the lawsuit. And there's no indication in the record that he ever requested a reassignment of the lawsuit. And so our position is that to the extent that arguing this would operate as a forfeiture, it would be a forfeiture of Mr. Teller's own making. He had options. If there's nothing more, thank you. And I appreciate your time this morning. Thank you, counsel. Mr. Pineda, you have some reserve time. Yes, sir. And I've got to cover some things really quickly here. And I think I can answer some of the questions that came up in the first place. The injury occurred in 2019, March of 2019, not 2017. So the status is the claim was denied. It's as of now, it's denied. And as we all know, the future is a guess. Say again, we know why or what the grounds were for the denial. I do. They're denying that a blast in the mine even took place. My client on March 5th of 2019 had a chest X-ray and was completely cleared to work. He's a minor. That's what he does in his career. He was completely fine. One week later, on March 12th, this blast occurred in a raise. He was not cleared out. And we've got gobs of medical evidence. The man was in the hospital. He was on an ECMO. He almost died. He's getting seizures. I've already consulted with a pulmonology expert. I think we get the picture. Okay. So they're contending there was not even a blast. So they're taking the position he wasn't even injured. But in any event, back to the real quick to the language and the interpretation of Section B. The legislature could have said somebody who instituted a claim, but they didn't say that. They said somebody entitled to compensation. So if the words have meaning, there you go. Last couple of things, because counsel talked about tally, and I was reading along. But she stopped at a period after she read that an employee entitled to compensation is one who's injured in the course and scope of his employment. The next sentence says, we find that the plain import of 23-1023 is to allow carrier subrogation and settlement approval rights in the limited circumstance where a third-party tortfeasor injures an employee in the course and scope of his employment, which is what happened here. Well, there's nothing to subrogate. There's no settlement to approve. So tally should have been more fully considered by the district court. Lastly, let me talk about Oaks, because she cited that. The Oaks court specifically said they agreed with the reasoning in Moretto that the assignment and reassignment provisions were not intended to benefit third-party tortfeasors, which is exactly what would happen here. The Oaks case said, moreover, applying the automatic assignment in this situation would vitiate the overriding theme of the workers' compensation system, which is, and they were quoting Aitken, to preserve a claimant's opportunity to be made whole to the fullest possible extent. Nothing more, nothing less. Lastly, in Oaks, the court said we will not imply a legislative intent that is at odds with the statutory scheme, and Aitken there cited Dietz v. General Electric. My final point to you all, and I really thank you for hearing our case today, is that the ocean accident case that I cited, which held that if the court entertained serious doubt about the applicability of a statute, it should not hesitate to apply a liberal rule of construction in favor of the employee. All right, thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision, and the court will stand in recess for the day. Thank you. Thank you, your honor. Hear ye, hear ye. All persons having had business with the Honorable, the United States Court of Appeals for the Ninth Circuit, will now depart. The court for this session now stands adjourned.
judges: O'SCANNLAIN, GRABER, Fitzwater